UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANE SMITH,<br>　　　　Plaintiff,<br>　　v.<br>VMWARE, INC.,<br>　　　　Defendant. | Case No. 15-cv-03750-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

This matter came before the Court on December 21, 2015 for a hearing on Defendant's motion to compel arbitration. After carefully considering the parties' written and oral arguments, the Court now GRANTS Defendant's motion and hereby DISMISSES all of Plaintiff's remaining claims without prejudice.

**BACKGROUND**

Plaintiff Dane Smith ("Smith") is a former employee of Defendant VMware, Inc. ("VMware"), a large software company which specializes in cloud infrastructure and virtualization software, and contracts with the United States Government. Smith worked at VMware's headquarters in Palo Alto from 2005 to 2010. Mot. at 6 (Docket No. 76).

Prior to starting his employment with VMware, Smith received an offer letter, which contained some terms of employment, such as his salary and benefits, but did not mention arbitration. Ex. 1 to Smith Decl. at 4-5 (Docket No. 77-1). On his first day of work on August 1, 2005, Smith signed a "Key Employment Agreement" ("the Agreement"), which stated in pertinent part:

> I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Santa Clara County, California, in accordance with the rules then in effect of the American Arbitration Association.

Ex. A to Gannaway Decl. at 5 (Docket No. 76-2). From 2005 to 2008, Smith worked as Vice President of Sales for the Americas. Opp'n at 5 (Docket No. 77). While employed in that position, Smith discovered that the United States Government was not receiving the appropriate price on VMware products, and began investigating VMware's pricing practices. *Id.* Smith was demoted in 2008 and again in 2009, and was terminated in January of 2010, effective March 15, 2010. *Id.* at 5-6.

Smith contends that he was retaliated against – and ultimately terminated – because of his investigation of VMware's fraudulent federal pricing practices. *Id.* at 5-6. He filed a complaint in the United States District Court for the Eastern District of Virginia on July 9, 2010, alleging representative claims on behalf of the United States, as well as claims of retaliation and wrongful termination, under the False Claims Act ("FCA"). *Id.* at 6-7.

The complaint was initially sealed pending resolution of the FCA representative claims, which were settled in June of 2015. *Id.* at 5 n.2; Order on Dismissal Stip. (Docket No. 57). Thus, Smith's only remaining claims are his FCA retaliation and wrongful termination claims. Opp'n at 6-7. Among other relief, Smith seeks compensatory, statutory and punitive damages, as well as reinstatement to his pre-retaliation job position, as permitted under the FCA.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, a party to an arbitration agreement can petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9

U.S.C. § 2. "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013). Nonetheless, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. In accordance with this principle, the Supreme Court has held that parties may agree to limit the issues subject to arbitration, and to arbitrate according to specific rules. *Id; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev., LLC*, 55 Cal. 4th 223, 236 (2012). Furthermore, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted). A court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of coverage." *AT&T Tech, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

**DISCUSSION**

In ruling on a motion to compel arbitration, a district court's inquiry is two-fold. The Court decides "(1) whether a valid agreement to arbitrate exists; and if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)). At the outset, this Court notes that Judge Davila considered the enforceability of the same arbitration provision[1] in a 2012 suit by a

---

[1] Defendant attached both Smith's "Key Employment Agreement" and Laughlin's "Employment Agreement" to demonstrate the similarity of the agreements to the Court. Exs. A and B, respectively, to Gannaway Decl. The Court notes that the titles of the agreements differ slightly; and Smith's "Category of Employment" box is not checked, while Laughlin's agreement has the "Regular Employee" box checked. Other than those differences, the agreements – including the arbitration provisions – are identical.

3

different VMware employee, Elizabeth Laughlin ("Laughlin"). *Laughlin v. VMware, Inc.*, No. 11-CV-005530, 2012 WL 298230 (N.D. Cal. Feb. 1, 2012). Laughlin did not file suit under the FCA; rather her claim was a misclassification claim. *Id.* at *1. In *Laughlin*, Judge Davila ultimately found the arbitration clause valid, despite some unconscionability, because the substantively unconscionable provisions could be severed. *Id.* at 7.

## I.  The Agreement is Valid and Enforceable

Arbitration clauses may be invalidated "based on the same grounds as exist in law or in equity for revocation of a contract," such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *Laughlin*, 2012 WL 298230, at *2. Thus, to assess the validity of an arbitration clause, the Court applies state law; here, California state law applies.[2] Smith argues that the arbitration clause, and the Agreement as a whole, is invalid due to unconscionability.

"Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power;" substantive unconscionability focuses on "overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and citations omitted). Both elements must be present, but courts employ a "sliding scale," whereby a stronger showing on one may make up for a weaker showing on the other. *Id.* Smith bears the burden of proving unconscionability. *Pinnacle,* 55 Cal. 4th at 236.

///
///
///

---

[2] Defendant's headquarters are in Palo Alto, California, and the Agreement specifies that it "will be governed by the laws of the State of California as they apply to contracts…" Ex. A to Gannaway Decl. at 6.

4

### A. Some procedural unconscionability exists, but it is insufficient to invalidate the Agreement on its own.

Turning to procedural unconscionability, the Court considers "the manner in which the contract was negotiated and the circumstances of the parties at that time;" not only focusing on the contract itself. *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001) (quoting *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1327 (1999)). Courts consider whether an agreement was a contract of adhesion – a standardized contract imposed on a party of weaker bargaining strength on a "take it or leave it" basis. *Armendariz*, 24 Cal. 4th at 113. Courts also consider whether the presentation of the contract constituted "oppression" or "surprise." *Id.* at 114.

Smith points out that the Agreement at issue was presented on a pre-printed form which was not tailored in any way to Smith – in fact, the box indicating the applicable "category of employment" was not even checked, and Smith's name and position were nowhere in the Agreement. Opp'n at 7; Ex. A to Gannaway Decl. at 2. It is undisputed that this was a standardized contract; thus it could be considered a contract of adhesion depending on the bargaining power of the parties and the circumstances under which it was presented. Smith alleges that he was not given the opportunity to negotiate the terms of the Agreement, and that the Agreement was provided on a take it or leave it basis. Opp'n at 7. Smith also argues that VMware, as one of the largest software companies in the world, had much greater bargaining power than a single employee. *Id.*

"Oppression" is present when the person against whom the contract is sought to be enforced had such little bargaining power that no real negotiation occurred. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). While it is true that a large company has greater bargaining power than a single employee, the Court finds it important to note that Smith was not a low-level employee; rather he was an Executive with a base salary of $225,000 (and could earn up to $450,000 per year) plus stock options. Ex. 1 to Smith Decl. The burden is on Smith to demonstrate unconscionability; the Court finds that

he did not meet this burden. Smith alleged no specific facts that he was pressured to sign the Agreement quickly, or that he wanted more time or to consult with an attorney but could not. At oral argument, Smith's counsel emphasized that VMware did not provide any examples of employees who had negotiated away their arbitration provisions, and thus there must be no opportunity. However, the Court accepting this extrapolation would improperly shift the burden of proof to VMware.

Finally, Smith points to the fact that he was not given a copy of the American Arbitration Association ("AAA") Rules referenced in the Agreement. Opp'n at 10. The Court finds that the failure to attach a copy of the rules did not render the Agreement procedurally unconscionable, because of the lack of surprise due to the availability of the rules online. *Lane v. Francis Capital Managm't LLC*, 224 Cal. App. 4th 676, 691 (2014) ("There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties – the AAA rules are available on the Internet."). Furthermore, as an Executive for a software company, this Court finds it difficult to believe that Smith would have any trouble locating the AAA Rules.

For these reasons, the Court finds the Agreement to be somewhat procedurally unconscionable due to the standardized nature of the contract itself, but not to such a great extent that it would invalidate the agreement without a strong showing of substantive unconscionability that could not be severed from the Agreement.

### B. Some provisions of the Agreement are substantively unconscionable.

Turning to substantive unconscionability, the Court focuses on the terms of the Agreement, and whether the results are "overly harsh" or "one-sided," and whether mutuality exists. *Armendariz*, 24 Cal. 4th at 114; *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997-98 (9th Cir. 2010). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be 'so one-sided as to shock the conscience.'" *Pinnacle*, 55 Cal. 4th at 246 (quoting *24 Hour Fitness, Inc. v. Super. Ct*, 66 Cal. App. 4th 1199, 1213 (1998)). Here, Smith argues that the substantively

unconscionable terms of the arbitration clause are: (1) the cost splitting and attorney's fees provision; (2) the choice of forum provision; and (3) the use of AAA Rules.

### 1.  Fee- and Cost-Splitting Provisions

The arbitration clause in the Agreement provides that VMware and Smith "shall each pay one-half of the costs and expenses of such arbitration, and each of [them] shall separately pay [their] counsel fees and expenses." Ex. A to Gannaway Decl. at 5.

In the context of an arbitration agreement, a "fee-splitting provision is not per se substantively unconscionable under California law … [although] to the extent the fee-splitting provision would impede [a plaintiff] from vindicating statutory rights, it would be unenforceable and illegal under California law as contrary to public policy." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006); *see also Armendariz*, 24 Cal. 4th at 110-11 (arbitration process cannot require employee to "bear any type of expense that the employee would not be require to bear if he or she were free to bring the action in court."). Here, if Smith were to prevail on his claim in court, he would be awarded his attorney's fees because the Fair Labor Standards Act provides a one-way fee shifting provision to benefit prevailing employees. *See* 29 U.S.C. § 216(b). Here, the fee-shifting provision in the Agreement would deny Smith this statutory right and force him to bear the additional expense of his attorney's fees; thus, the provision is substantively unconscionable.

Similarly, a cost-splitting provision is unconscionable if it creates a "substantial economic barrier to justice." *Circuit City*, 279 F.3d at 894. Here, the clause requires the parties to share the costs and expenses of arbitration – which can be extremely high – and the arbitrator cannot alter this allocation. Thus, the cost-splitting provision is also unconscionable.

///

///

///

### *2. Choice of Forum*

The choice of forum clause at issue in the Agreement reads as follows:

> **b. Equitable Remedies.** I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Section 2, 3 and 5 herein.[3] Accordingly, I agree that if I breach any such Section, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement.

Ex. A to Gannaway Decl. at 5. In *Laughlin*, Judge Davila found the provision at first to be substantively unconscionable due to the one-sided nature of the clause, but found that the clause was reasonably justified by a business purpose, and was therefore not unconscionable. *Laughlin*, 2012 WL 298230, at *6 ("[W]ithout the ability to restrain breaches of intellectual property, subsequent arbitration could be rendered meaningless."). The Court agrees with Judge Davila, and finds that the clause is reasonably justified by a business purpose, and is necessary to protect VMware's intellectual property. The plain language of the provision is sufficiently narrow: it only grants provisional injunctive relief from breaches of VMware's intellectual property. Furthermore, such a provision in a software company's employment agreement is not so one-sided as to shock the conscience.

The Court is also unconvinced by Smith's argument that there is no business purpose to preclude employees from the same relief. The equitable relief that Smith seeks – reinstatement to his pre-retaliation job position – is not related to intellectual property, and is also available through arbitration. *See* Rule 39(d), *AAA Emp't Arbitration Rules & Mediation Procedures ("AAA Rules")* at 29.[4]

---

[3] Sections 2, 3 and 5 are titled "Confidential Information," "Inventions," and "No Solicitation of Employees," respectively; all three sections concern VMware's intellectual property.
[4] The AAA Rules are available at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=latestreleased.

### *3.    AAA Rules*

Finally, the arbitration clause states that the arbitration will proceed "in accordance with the rules then in effect of the American Arbitration Association." Ex. A to Gannaway Decl. at 5. Such language incorporates the applicable AAA Rules into the terms of the Agreement itself. *Cox*, 533 F.3d at 1122. Smith contends that the AAA Rules make the Agreement substantively unconscionable, noting by way of example that discovery is not guaranteed under the AAA Rules but is instead subject to the discretion of the arbitrator. The AAA Rule relating the discovery states:

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

Rule 9, *AAA Rules* at 19. Smith cites *Winston v. Academi Training Center*, No. 12-CV-767, 2013 WL 989999 (E.D. Va. Mar. 13, 2013), for the proposition that unconscionability is increased when discovery is limited. However, *Winston* did not involve the AAA Rules, but rather rules set forth by the defendant company providing that "no discovery is allowed in arbitration." Id. at *2. Here, the Court finds that allowing, "full and fair exploration of the issues in dispute" does not curtail discovery to the extent that the AAA Rule pertaining to discovery is substantively unconscionable. A benefit of arbitration is the expedited nature of the proceedings; thus it does not "shock the conscience" that the arbitrator would have the power to limit discovery as s/he sees fit.

### C.    The substantively unconscionable provisions can be severed.

An unconscionable provision of an arbitration agreement may be severed to retain the remaining provisions. *Rent-A-Center, West, Inc., v. Jackson*, 561 U.S. 63, 71-72 (2010). However, under California law, an arbitration agreement that is "permeated" or "tainted" with multiple unconscionable provisions, such that the provisions cannot be severed without reforming the contract, is unenforceable. *Armendariz*, 24 Cal. 4th at 123-25. Courts consider whether the offending clauses are central or collateral to the purpose

9

of the agreement, and what the resulting agreement will look like after severance. *Davis*, 485 F.3d at 1066, 1084 (severance not possible if striking provisions would "gut" agreement). If the number of unconscionable provisions indicate "a systematic effort to impose arbitration on the employee" with the purpose of disadvantaging the employee, severance is not possible. *Armendariz*, 24 Cal. 4th at 124.

Here, the Court has identified two areas of substantive unconscionability – the cost-splitting and attorney's fees provisions – which are found in the same sentence of the Agreement. The Court finds that these provisions are easily severable, as they do not permeate the Agreement; also the presence of a severability clause[5] makes severance more feasible. *See, e.g,. Grabowski v. Robinson*, No. 10-CV-1658, 2011 WL 4353998, at *18 (S.D. Cal. Sept 19, 2011) (three unconscionable provisions did not permeate agreement, and agreement had a severability clause; thus unconscionable provisions were severable). Smith has not met his burden of showing that the Agreement is so permeated with unconscionability that severance is not possible, and the unconscionability that is present does not indicate a systematic effort to disadvantage Smith. Thus, the Court severs the cost-splitting and attorney's fees provisions from the Agreement pursuant to California Civil Code Section 1670.5.

At oral argument, Smith's counsel argued that if the fee- and cost-splitting provisions were severed from the Agreement, Smith would be left unsure about his rights in arbitration. However, as noted before, the reference to the AAA Rules in the Agreement serves to incorporate the Rules themselves into the Agreement, so when the provisions are severed from the Agreement, the fee and cost allocation will be governed by the applicable AAA Rules. Notably, Rule 39(d) states: "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." *AAA Rules* at 29.

---

[5] The severability clause provides that "[i]f one or more of the provisions in this Agreement is deemed void by law, then the remaining provisions will continue in full force and effect." Ex. A to Gannaway Decl. at 6.

1   Thus, when the claims are submitted to arbitration, Smith will not only have injunctive

2   relief in the form of reinstatement available (in accordance with the FCA), but if he

3   prevails he will recover his attorney's fees (in accordance with the mandatory fee-shifting

4   provision of the FLSA).

## II.     The Agreement Covers the Dispute at Issue

Courts deny motions to compel arbitration if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650.  Furthermore, under the FAA, any doubts that courts may have about the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).  Here, the dispute at issue is retaliation and wrongful termination.  The language in the Agreement defining the scope of arbitration reads: "I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration…" Ex. A to Gannaway Decl. at 5.

The language "arising out of *or relating to*" and "*any* dispute or controversy" makes the clause very broad and inclusive.  *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (such language "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract"); *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007) (such language "extends beyond contract claims to encompass tort causes of action").  However, Smith contends that because of the language only considers claims arising out of or relating to the *Agreement*, not the employment *relationship*, the wording is not as broad as it seems.[6] Smith also argues that FCA claims are not claims for violating the Agreement; they are separate and independent claims from the contract itself.

---

[6] Smith cites *U.S. v. Paige*, 566 F. App'x 500 (6th Cir. 2014).  However, the *Paige* clause was not as broad as the clause here, because it did not contain the "*relating to*" language.

1    As a matter of logic, the Court finds that the Agreement sets forth the relationship
between the parties and their rights therein; thus, both retaliation and wrongful termination
claims, at the very least, *relate to* the parties' relationship.  Because the language is very
broad and the employment claims at issue relate to the Agreement, and the Court must
resolve disputes in favor of arbitration, the Court finds that the arbitration clause
encompasses the remaining FCA claims.

### III.   The Court Exercises its Discretion to Dismiss the Entire Action

Section 3 of the FAA requires courts to stay actions pending arbitration.  9 U.S.C. §
3.  However, the Court has discretion to dismiss the action in its entirety, rather than stay
the action, if all of the remaining claims asserted in the complaint must be submitted to
arbitration.  *Sparling v. Hoffman Constr. Co.*, 846 F.2d 635, 638 (9th Cir. 1988).  Here, all
remaining claims must be arbitrated, so the Court exercises its discretion and dismisses the
remaining claims.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to compel
arbitration.  All of Plaintiff's remaining claims shall be submitted to arbitration; thus, the
Court DISMISSES the entire action without prejudice.

**IT IS SO ORDERED.**

Dated: 01/05/06                            _____
                                           THELTON E. HENDERSON
                                           United States District Judge

12