1  LYNNE C. HERMLE (STATE BAR NO. 99779)
   JESSICA R. PERRY (STATE BAR NO. 209321)
2  SHANNON B. SEEKAO (STATE BAR NO. 267536)
   MELANIE D. PHILLIPS (STATE BAR NO. 245584)
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, California  94025
   Telephone:     650-614-7400
5  Facsimile:     650-614-7401
   lchermle@orrick.com
6  jperry@orrick.com
   sseekao@orrick.com
7  mphillips@orrick.com

8  Attorneys for Defendant
   VMware, Inc.

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14  DANE SMITH, an individual,              Case No. 15-cv-03750-HSG

15              Plaintiff,                   **VMWARE'S OPPOSITION TO
                                             PLAINTIFF'S MOTION TO
16       v.                                  VACATE ARBITRATION
                                             AWARD**
17  VMWARE, INC., a Delaware corporation,

18              Defendant.                   **Date:** December 7, 2017
                                             **Time:** 2:00 p.m.
19                                           **Room**: 2

20                                           Honorable Haywood S. Gilliam, Jr.

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................ 3

    A.    Pre-Arbitration Proceedings and Motion to Compel Arbitration............................. 3

    B.    Selection of the Arbitrator and Arbitration Proceedings..................................... 3

    C.    Interim Awards, Post-Arbitration Briefing, and Final Arbitration Award............... 4

III.  THE COURT SHOULD DENY SMITH'S MOTION TO VACATE............................... 5

    A.    Smith Received a Fundamentally Fair Hearing under 9 U.S. C. §10(a)(3) ............ 6

        1.    Smith Was Afforded the Opportunity to Present His Evidence................. 6

            a.    Smith Was Permitted to Testify at the Hearing ............................. 6

                (1)    The Arbitrator Had Discretion to Exclude Smith's Declaration .......................................................................... 6

                (2)    Smith and His Counsel Selected How He Testified at the Hearing ........................................................................ 7

            b.    Smith Had the Opportunity to Present Exhibits at the Hearing .............................................................................. 9

        2.    Smith Has Not Demonstrated That He Was Prejudiced ...................... 11

    B.    Judge Cahill's Arbitration Award Is Not in Manifest Disregard of the Law........ 12

        1.    Judge Cahill Did Not Ignore the Procedural Rules................................... 12

        2.    Judge Cahill Did Not Ignore Smith's Claim for "Reputational" Damages........................................................................................... 13

        3.    Judge Cahill Did Not Ignore Applicable Law Regarding Attorneys' Fees ................................................................................................ 14

    C.    There Is No Basis for Finding Evident Partiality under 9 U.S.C. § 10(a)(2)........ 15

        1.    Smith Waived Any Purported Conflict By Not Raising It Prior to the Arbitration Hearing ................................................................... 15

        2.    Ms. Gillette Joining JAMS Does Not Support a Finding of Evident Partiality ........................................................................................ 17

IV.   CONCLUSION. ........................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chitimacha Tribe of La. v. Harry L. Laws Co.,*
690 F.2d 1157 (5th Cir. 1982)................................................................17

*Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburg,*
933 F.2d 1481 (9th Cir. 1991)..............................................................6, 11

*Fid. Fed. Bank, FSB v. Durga Ma Corp.,*
386 F.3d 1306 (9th Cir. 2004)........................................................15, 16, 18

*Gray v. Chiu,*
212 Cal. App. 4th 1355 (2013) ...............................................................18

*Gulf Coast Indus. Workers Union v. Exxon Co., USA,*
70 F.3d 847 (5th Cir. 1995)...................................................................10

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)......................................................................14, 15

*Iran Aircraft Indus. v. Avco Corp.,*
980 F.2d 141 (2nd Cir. 1992)............................................................10, 11

*Lagstein v. Certain Underwriters at Lloyd's, London,*
607 F.3d 634 (2010)..........................................................................12

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,*
44 F.3d 826 (9th Cir. 1995)..................................................................12

*Neal v. Honeywell, Inc.,*
995 F. Supp. 889 (N.D. Ill. 1998) .......................................................14, 15

*Pac. W. Sec. Inc. v. George,*
Case No. C–13–4260 JSC, 2014 WL 894843 (N.D. Cal. Mar. 4, 2014) ...................11

*Pure Line Seeds, Inc. v. Gallatin Valley Seed Co., Inc.,*
Case No. 1:14–CV–00015–EJL, 2014 WL 3721271 (D. Idaho July 24, 2014) .............11

*Stolt-Nielsen N.A. v. AnimalFeeds Int'l Corp.,*
559 U.S. 662 (2010)........................................................................5, 12

*Sunshine Mining Co. v. United Steelworkers,*
823 F.2d 1289 (9th Cir. 1987)..................................................................6

*In re Sussex,*
781 F.3d 1065 (9th Cir. 2015).............................................................15, 17

*U.S. Life Ins. Co. v. Superior Nat'l Life Ins. Co.*,
   591 F.3d 1167 (2010) ............................................................................6, 11

**Statutes**

9 U.S.C. §1, *et seq.* ..................................................................................5

9 U.S.C. § 10(a)(2) ...........................................................................2, 5, 15

9 U.S.C. § 10(a)(3) ............................................................................ *passim*

9 U.S.C. § 10(a)(4) ...........................................................................2, 5, 12

31 U.S.C. § 3730(h) ...............................................................................14

Cal. Code Civ. Proc. § 1281.9(2) ...........................................................18

False Claims Act ................................................................................ *passim*

Federal Arbitration Act .......................................................................2, 17

Federal Arbitration Act, Section 10 ...........................................................5

**Other Authorities**

California Ethics Standard 8(b)(1)(B) ......................................................18

California Evidence Code ........................................................................12

JAMS Rule 22(d) ....................................................................................12

JAMS Rule 22(e) .......................................................................................7

9

OPPOSITION TO MOTION TO
VACATE
15-CV-03750-HSG

I.    **INTRODUCTION**

Following more than a year of pre-arbitration proceedings, Plaintiff Dane Smith and Defendant VMware, Inc. participated in a five-day arbitration in January 2017 to resolve Smith's employment claims before the highly respected and experienced arbitrator, Judge William Cahill.  Over the course of those five days, the parties called twelve witnesses (eight of whom were called by Smith) and introduced into evidence more than 200 exhibits.  After the arbitration hearing, Judge Cahill allowed the parties to submit supplemental briefs on damages and attorneys' fees.  In the end, Judge Cahill found VMware liable on two of Smith's five claims and awarded Smith approximately $1.5 million in damages, attorneys' fees, costs, and prejudgment interest.

Although the proceedings were conducted fairly and impartially, and although Judge Cahill correctly applied the law throughout the course of proceedings, Smith nevertheless seeks the extraordinary remedy of vacating the final award of what was supposed to be a binding and final arbitration.

The Supreme Court has cautioned that a party petitioning to vacate an arbitration award must clear a "high hurdle."  Here, Smith attempts to fling himself over the bar by asserting six arguments.  Each argument, however, fails to clear that hurdle.

The first two of Smith's arguments are under 9 U.S.C. § 10(a)(3).  Smith argues that he was deprived of a fundamentally fair hearing by the arbitrator because (1) he, as the claimant in the case, was not permitted to testify via declaration, and (2) all exhibits from his exhibit list to which VMware had not objected to ahead of the hearing were not admitted at the outset of the hearing.  The record shows, however, that Judge Cahill properly exercised his discretion in determining the hearing process, including the manner of testimony and admission of exhibits—a process both parties expressly consented to during the proceedings.  Most critically, Smith does not show that he was prejudiced by the hearing process, nor can he, given that he was permitted to testify via direct examination and had the opportunity to introduce exhibits over the course of the five-day hearing.  Ultimately, Smith's first two arguments fail to clear the fundamental

1   fairness hurdle of 9 U.S.C. § 10(a)(3).

2       Smith next asserts three separate claims that Judge Cahill acted in "manifest

3   disregard of the law" under 9 U.S.C. § 10(a)(4), by failing to follow applicable rules and

4   not awarding the reputational damages and attorneys' fees that Smith sought.  Notice of

5   Motion & Motion to Vacate Arbitration Award ("Mot.") (Oct. 13, 2017), Dkt. No. 96 at

6   1.  But Smith has not shown that any procedural rules were violated.  Nor has he

7   demonstrated that Judge Cahill "ignored the relevant law" and applied his own brand of

8   justice.  Instead, the record shows that Judge Cahill followed the rules and the law

9   throughout the proceedings, including correctly limiting Smith's damages and attorneys'

10  fees claims.  Accordingly, Smith's three arguments do not clear the manifest disregard

11  hurdle of 9 U.S.C. § 10(a)(4).

12      Smith's final argument is that the award should be invalidated due to evident

13  partiality under 9 U.S.C. § 10(a)(2).  Smith argues that Judge Cahill's failure to disclose

14  that a former Orrick partner, who had previously been counsel for VMware, joined the

15  JAMS organization prior to the arbitration hearing demonstrates evident partiality and

16  requires that the award be vacated.  However, Smith admits he was personally aware of

17  and "very apprehensive" about this specific issue three months prior to the arbitration

18  hearing, and he made no objection prior to or during the hearing.  Failure to raise such a

19  conflict constitutes a waiver.  Moreover, there is no authority to support a finding of

20  partiality for nondisclosure of an attorney who formerly represented a party joining the

21  arbitrator's dispute resolution organization.  Smith's final argument therefore fails to

22  clear the evident partiality hurdle of 9 U.S.C. § 10(a)(2).

23      In sum, none of Smith's arguments come close to clearing the "high hurdle" the

24  Supreme Court has set for vacating an arbitration award under the Federal Arbitration

25  Act.  To the contrary, Judge Cahill conducted a fair arbitration hearing, correctly applied

26  the law, and acted with impartiality throughout.  Indeed, while VMware does not believe

27  it should have been found liable at all, it does not question the fairness or integrity of the

28  arbitration process.  Having had a full and fair opportunity to have the claims in this case

- 2 -

1   heard, Smith's motion to vacate must be denied.

2   **II.     FACTUAL BACKGROUND**

3         **A.     Pre-Arbitration Proceedings and Motion to Compel Arbitration**

4         Smith originally filed the complaint in this action under seal on July 9, 2010, in

5   the Eastern District of Virginia.  Dkt. No. 1.  His original complaint, and amended

6   complaints that followed, included two groups of claims:  (1) alleged violations of the

7   False Claims Act ("FCA"), asserted on behalf of the United States; and (2) retaliation and

8   wrongful termination claims.  Dkt. Nos. 1, 18, 25, 39.  The complaint remained under

9   seal until June 23, 2015.  Dkt. No. 55.  After the FCA claims were settled with the

10   government (which included for Smith a sizeable bounty fee), Smith's employment

11   claims were transferred to this Court in August 2015.  Dkt. No. 61.  In January 2016,

12   Judge Henderson granted VMware's motion to compel arbitration with respect to Smith's

13   employment claims and dismissed the instant case.  Dkt. No. 83 (Jan. 5, 2016).

14         **B.     Selection of the Arbitrator and Arbitration Proceedings**

15         The parties selected and stipulated to Judge William Cahill as their arbitrator

16   through the JAMS selection process.  Declaration of Shannon Seekao in Support of

17   Opposition to Motion to Vacate ("Seekao Decl."), Ex. 1.  The parties conducted

18   discovery and generally prepared for arbitration in January 2017.

19         During the five-day arbitration in January 2017, the parties called twelve

20   witnesses—eight of whom were called by Smith.  Indeed, Smith himself testified over the

21   course of three different days, spending notable time on irrelevant or insignificant topics

22   such as Smith's educational background, 1 Tr. 277:13-278:5, documentary films he has

23   been involved in, 1 Tr. 278:6-281:6, and his job history going back to 1984, 1 Tr. 281:7-

24   293:20.

25         Over the course of the five days of testimony, the parties admitted more than 200

26   exhibits.  After the hearing, counsel for both Smith and VMware worked together to

27   submit an agreed upon list of admitted exhibits to Judge Cahill.  Seekao Decl., ¶ 2; Ryan

28   Decl., Ex. V (SMITH00693-98).

OPPOSITION TO MOTION TO
VACATE
15-cv-03750-HSG

### C.    Interim Awards, Post-Arbitration Briefing, and Final Arbitration Award

Judge Cahill issued an interim award on March 13, 2017, finding VMware liable as to only two of Smith's five claims—specifically, an October 2008 pay reduction and a December 2008 demotion.  Judge Cahill did *not* find VMware liable on Smith's retaliatory termination claim, which had provided the core basis for Smith's $75 million damages demand.  Judge Cahill invited the parties to provide supplemental briefing on the issue of damages, given that Smith had only prevailed on two of his five claims.  Ryan Decl., Ex. B (Interim Award) (SMITH00014-35).

In his supplemental damages briefing, Smith broke his claimed damages into two categories:  (1) "The direct reduction in salary and compensation from October 1, 2008 to the end of his tenure at VMware on March 15, 2010;" and (2) "Lost post-termination earnings due to diminished reputation, title and professional cache [sic] . . . ."  *Id.*, Ex. J at 1 (SMITH00329).  Smith claimed that to be made "whole" under the FCA, the full measure of damages was $21 million, down from his original claim of $75 million.  *Id.* He indicated that a "conservative approach" would require that he receive between $3.2 million and $6.1 million.  *Id.* at 1-2 (SMITH00329-30).  VMware submitted a response, explaining that Smith was not entitled to the millions sought, and Smith filed a reply.

Subsequent to this briefing, on May 2, 2017, Judge Cahill issued a Second Interim Award on the issue of damages.  He specifically limited the damages award to the period of "October 1, 2008, until the end of Smith's tenure at VMware on March 15, 2010."  *Id.*, Ex. B (Interim Award No. 2) at 3 (SMITH00039).  Judge Cahill declined to "award post-termination losses because . . . Smith was not terminated in violation of the FCA."  *Id.* Based on the four components of damages that Smith had asserted he suffered in the relevant period, Judge Cahill awarded Smith $305,000.  *Id.* at 7 (SMITH00043).  Judge Cahill again invited further briefing from the parties, this time regarding attorneys' fees, *id.* at 7-8 (SMITH00043-44), which the parties subsequently provided.

With the issues of liability and damages resolved, and while Judge Cahill was considering the parties' submissions regarding attorneys' fees, Smith filed a motion to

1    reopen the hearing.  In his motion, Smith raised several issues for the first time, including

2    the exclusion of Smith's declaration and the failure to admit all exhibits on the exhibit list

3    to which VMware had not objected prior to the hearing.  VMware objected to and

4    opposed the motion.  Judge Cahill summarily denied the motion.  Seekao Decl., Ex. 5.

5         The Third Interim Award was issued on July 13, 2017.  In it, Judge Cahill

6    awarded Smith over $1 million in attorneys' fees, which included a 55% reduction of the

7    lodestar based on Smith's "level of success" in the case, and $240,000 in costs.  Ryan

8    Decl., Ex. B (Interim Award No. 3) at 9-10 (SMITH00054-55).  This brought Smith's

9    total award (damages, attorneys' fees, costs, and prejudgment interest) to $1,570,830.51.

10        Judge Cahill's Final Arbitration Award was issued on July 17, 2017, in

11   accordance with and incorporating his three interim awards.  *Id.*, Ex. B (Final Award)

12   (SMITH00004-12).  This case was reopened on September 25, 2017, and Smith filed the

13   instant motion to vacate the arbitration award on October 13, 2017.[1]  Dkt. No. 96.

14   **III.    THE COURT SHOULD DENY SMITH'S MOTION TO VACATE**

15        To be entitled to have the award vacated, Smith "must clear a high hurdle."  *Stolt-*

16   *Nielsen N.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  "It is not enough for

17   petitioner[] to show that the panel committed an error – or even a serious error."  *Id.*  The

18   claimed error in the Final Award must fit within one of the narrow grounds for vacating

19   an award provided for in Section 10 of the Federal Arbitration Act.  9 U.S.C. §1, *et seq.*

20        Smith asserts three such grounds in his motion:  (1) the arbitration was

21   "fundamentally unfair," under 9 U.S.C. §10(a)(3); (2) the arbitrator manifestly

22   disregarded the law, under 9 U.S.C. §10(a)(4); and (3) the hearing was tainted by

23   "evident partiality," under 9 U.S.C. §10(a)(2).  None of these arguments support vacating

24   the award in this case.

25

26

27

28

[1] Despite the three months Smith had between the Final Award and this motion, Smith failed to file any evidence by the Court-ordered due date for his motion.  Both Smith's and Ryan's declarations, as well as the arbitration transcripts, were filed a day late, in violation of the Court's order.  Dkt. Nos. 97, 97-1, 97-2, 98.

**A.    Smith Received a Fundamentally Fair Hearing Under 9 U.S. C. §10(a)(3)**

An arbitration does not need to be a "perfect hearing," it need only be a fair one. *Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1491 (9th Cir. 1991) (denying motion to vacate where party received a fair, but not "perfect," hearing).  To be fundamentally fair, an arbitration need only provide the minimum requirements of fairness:  (1) adequate notice; (2) a hearing on the evidence; and (3) an impartial decision by the arbitrator.  *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987).  Where a party claims he was denied an opportunity to present evidence, as Smith does here, he must show:  (1) a refusal to hear evidence pertinent and material to the controversy; and (2) prejudice.  *U.S. Life Ins. Co. v. Superior Nat'l Life Ins. Co.*, 591 F.3d 1167, 1174 (9th 2010).  Smith has not shown and cannot show either because the fairness of the arbitration process here far exceeded these minimal requirements.

**1.    Smith Was Afforded the Opportunity to Present His Evidence**

Smith argues that there were two ways in which he was precluded from presenting his case.  First, Smith claims that the Judge Cahill improperly excluded his declaration and associated exhibits.  Second, Smith claims that Judge Cahill failed to admit a subset of exhibits from the Joint Exhibit List that were not objected to prior to the hearing.  Both arguments lack merit because Smith was given a full and fair opportunity to present his case, both through live testimony and documentary evidence—a process he expressly agreed to at the hearing and did not object to until only after receiving an unfavorable award.

**a.    Smith Was Permitted to Testify at the Hearing**

**(1)    The Arbitrator Had Discretion to Exclude Smith's Declaration**

Smith's witness list indicated an intent to have Smith, the claimant in this case, submit his testimony via declaration and live testimony.  VMware objected to the

1   admission of the declaration and Judge Cahill did not admit it into evidence. Smith

2   claims that the exclusion of his declaration violated JAMS Rule 22(e) and Judge Cahill's

3   scheduling order. He is wrong.

4        Rule 22(e) provides the arbitrator discretion to consider witness affidavits; it does not

5   require them to be admitted. Ryan Decl., Ex. F at 22 (SMITH00233) ("The Arbitrator *may in*

6   *his or her discretion* consider witness affidavits or other recorded testimony . . . .") (emphasis

7   added). Upon VMware's objection to the admission of Smith's declaration, Judge Cahill

8   exercised his discretion and gave Smith the option of presenting his testimony via direct

9   examination or reading the declaration into the record.

10        Furthermore, Judge Cahill's Scheduling Order required the parties to indicate "the

11   manner in which each witness was expected to testify (in-person, telephonically or by

12   affidavit or by declaration . . . .)". Ryan Decl., Ex. I at 4 (SMITH000324). But this Order

13   does not preclude objection to the witnesses identified or to the manner in which the witness

14   is expected to testify, both of which are squarely within an arbitrator's discretion. Once an

15   objection was raised, Judge Cahill could and did exercise his discretion to indicate the

16   manner in which a witness would testify (if at all).

17        Upon VMware's objection to Smith's declaration, Judge Cahill appropriately

18   exercised his discretion to exclude Smith's declaration and provided Smith with the

19   opportunity to present his testimony live.

20                   **(2)**    <u>**Smith and His Counsel Selected How He Testified at**</u>

21                           <u>**the Hearing**</u>

22        Smith's motion suggests that because he was required to testify live, he was

23   precluded from presenting evidence about his activities in late 2009, his termination in 2010,

24   and his reputational damages. This makes no sense whatsoever. He did in fact testify live,

25   and had every opportunity to introduce evidence regarding his activities in late 2009, his

26   termination in 2010, and his reputational damages, if he so chose. The transcript of the

27   arbitration shows no ruling by Judge Cahill that explicitly precludes any such evidence or

28   testimony. Instead, to the extent any such evidence was not presented, this was due to

OPPOSITION TO MOTION TO
VACATE
15-cv-03750-HSG

1    strategic decisions made by Smith and his counsel about how best to present his case within

2    the time the parties had selected for the hearing.  Indeed, given some of the topics Smith and

3    his counsel chose to cover during his direct examination—such as Smith's educational

4    background, 1 Tr. 277:13-278:5, documentary films he has been involved in, 1 Tr. 278:6-

5    281:6, and his job history going back to 1984, 1 Tr. 281:7-293:20—his failure to present

6    evidence that was apparently very important to him was the direct result of his own case

7    management, not any rulings by Judge Cahill.

8         After VMware objected to Smith submitting testimony via declaration at the outset of

9    the hearing, Judge Cahill asked Smith's counsel if he wanted to present the substance of the

10   declaration by reading it into the record.  1 Tr. 233:23:-234:9.  Smith's counsel declined,

11   instead electing to present Smith's testimony via a direct examination.  1 Tr. 234:12-13.

12   After more than a half day of direct examination of Smith, Smith's counsel informed Judge

13   Cahill that he still had "one more hour" of direct examination.  3 Tr. 883:22-884:1.  Judge

14   Cahill accepted this estimate and told counsel, "I'll give you one more hour in the morning."

15   3 Tr. 884:4-5.  And Smith did in fact provide another hour of direct testimony the following

16   morning, after having had all night to reflect on the testimony already covered and what

17   would be important to cover in the remaining hour the next day.

18        During this final hour, Smith's testimony did not focus on filling in any key issues

19   from the 2009 and 2010 timeframes, as Smith's motion would suggest he was frantic to do.

20   Instead, Smith's counsel elected to "go back to the Diane Greene meeting in February 20,

21   2008."  Mot. at 13 (citing 4 Tr. 918).  And, when informed by Judge Cahill, "You have a

22   little more [time]" to complete Smith's testimony, the focus turned to "What philanthropic

23   things have you done besides the two movies that you talked about on the first day of your

24   testimony?"  4 Tr. 938:9-14.  If Smith had time to describe his non-work-related

25   philanthropic activities during his live testimony, he had time to present evidence to support

26   his unlawful termination claim and alleged damages.  Any failure to do so was the result of

27   strategic decisions made by Smith and his counsel, not by any procedures Judge Cahill put in

28   place to run a fair arbitration proceeding.

1    While Smith takes particular issue with Judge Cahill's finding that "[t]here was very

2   little testimony or evidence related to alleged SOX violations," Mot. at 14, this lack of

3   evidence was confirmed by Smith's own counsel during closing arguments.  While Smith

4   had two separate bases for his qui tam claim, the False Claims Act and SOX, Smith's counsel

5   admitted, "[t]here is no question the focus has been on the False Claims Act.  SOX is

6   something that is a secondary issue."  5 Tr. 1436:11-13.  Smith's counsel decided to put the

7   SOX arguments "at the back of the bus."  5 Tr. 1436:23-1437:1.  Ultimately, nothing Judge

8   Cahill did impeded Smith's ability to present such evidence, if he so chose.

9            **b.    <u>Smith Had the Opportunity to Present Exhibits at the</u>**
                      **<u>Hearing</u>**
10

11    Smith claims that he was precluded from presenting evidence at the hearing because

12   he believed that all exhibits from the exhibit list that had not been objected to would be

13   admitted at the outset of the hearing.  However, the transcript of the hearing does not support

14   that belief.  And Smith never sought to resolve the issue during the hearing.  Instead, he

15   presented exhibits through witnesses and agreed to a joint list of admitted exhibits at the

16   conclusion of the arbitration hearing (in fact, his own counsel drafted the joint admitted

17   exhibit list).  Only after the two interim rulings (which did not award Smith the liability

18   determinations and significant damages he had hoped for) did Smith claim exhibits were

19   unfairly excluded.

20    The process for how exhibits would be admitted was established on the first day of

21   the arbitration hearing.  VMware was the first party to use an exhibit with a witness.  The

22   exhibit was one that was on the exhibit list and had not been objected to by either party.  Yet,

23   when the exhibit was formally "moved" into evidence, Smith's counsel did not indicate a

24   belief that the exhibit had already been received into evidence.  Instead, counsel responded,

25   "No objection."  1 Tr. 148:14-18.[2]  At that juncture, Judge Cahill set forth his proposal for

26

27   ───────────────
     [2] The witness is being examined by Lynne Hermle, counsel for VMware.  Niall McCarthy is
     counsel for Smith.  This specific exchange on page 148 at lines 17, 18 has counsel names
28   backwards, as is clear from the transcript.

how exhibits should be handled during the hearing, "And I think everything ought to come in unless there is an objection." 1 Tr. 148:19-21. Smith's counsel again did not express any different understanding, but instead expressly accepted the procedure, stating: "I think that's fair, Your Honor." 1 Tr. 148:22. Judge Cahill offered that the introduction could be done more formally, if counsel preferred, but both parties agreed that such formality was not necessary. *See* 1 Tr. 148:23-149:2. When VMware's counsel sought clarification about whether exhibits needed to be offered into evidence a bit later on that first day, Judge Cahill indicated that they did not need to be "as long as you talk about them," which would serve as the trigger for admission and provide the other side the opportunity to object. 1 Tr. 155:9-13. Again, Smith sought no clarification about purportedly "pre-admitted" exhibits, and instead responded, "That's fine." *Id.*

These explicit exchanges regarding admission of exhibits happened on the first day, during the examination of the second witness, and prior to any testimony by Smith himself. So even if Smith had been under a different impression (which is refuted by the record in any event), Smith was on notice that this now claimed impression was not the procedure that had been established at the outset of the hearing. He then had the opportunity to introduce any and all exhibits necessary to his case through the remaining witnesses in his case-in-chief, including through his own direct testimony.

This case is thus clearly distinguishable from *Gulf Coast Industrial Workers Union v. Exxon Co., USA*, 70 F.3d 847 (5th Cir. 1995) and *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141 (2nd Cir. 1992) upon which Smith relies. In *Gulf Coast*, counsel sought to admit a specific document as a business record during the hearing. Both the arbitrator and opposing counsel told him that this was not necessary because the parties had stipulated to its admission. Nevertheless, the arbitrator's final ruling included a specific finding that the document in question was hearsay and not a business record. 70 F.3d at 849. In *Iran Aircraft*, the petitioner sought guidance from the arbitration panel about the best method for submitting voluminous invoices. Petitioner followed the instructions of the panel to submit an audit of the invoices. The final award discredited the audit, however, because the

1    underlying records were not introduced into the record.  980 F.2d at 146.  In both of these

2    cases, the petitioners complied with the arbitrator's orders to their significant detriment.

3         Here, Judge Cahill established the procedure for admitting documents into evidence

4    on the first day of the hearing.  Rather than expressing concern that this deviated from any

5    previous understanding or expectation, Smith's counsel repeatedly confirmed that Judge

6    Cahill's approach—requiring exhibits to be referenced as the trigger for admission—was

7    fine.  Indeed, together, the parties collectively admitted more than 200 exhibits following this

8    procedure, including dozens of exhibits entered by Smith's counsel during Smith's direct

9    examination.  At no time did Smith indicate that he needed more time to admit exhibits and

10   his own counsel drafted and approved the final joint admitted exhibit list which was given to

11   Judge Cahill at the close of the hearing..

12                   **2.**      **Smith Has Not Demonstrated That He Was Prejudiced**

13        Smith wholly ignores that he must show he was prejudiced by the alleged refusal to

14   hear pertinent and material evidence.  *U.S. Life Ins. Co.*, 591 F.3d at 1174.  Instead, Smith

15   generally argues that the outcome of the arbitration could have been different, if Judge Cahill

16   had accepted his declaration in full or if all un-objected-to exhibits on the joint exhibit list

17   had been admitted.  This conjecture is insufficient to meet the burden imposed on Smith to

18   demonstrate that "this evidentiary ruling influenced the outcome of the arbitration."  *Emp'rs*

19   *Ins. of Wausau*, 933 F.2d at 1490  (holding that petitioner "still is not entitled to vacatur

20   because of its lack of evidence of prejudicial impact.").  Without evidence that a specific

21   ruling by Judge Cahill affected the outcome of the arbitration, Smith's challenge amounts to

22   an impermissible request that the Court review the merits of his claims.  *See, e.g.*, *Pure Line*

23   *Seeds, Inc. v. Gallatin Valley Seed Co.*, No. 1:14–CV–00015–EJL, 2014 WL 3721271, at *6

24   (D. Idaho July 24, 2014) (rejecting Section 10(a)(3) misconduct challenges as "equivalent to

25   a merits review"); *Pac. W. Sec. Inc. v. George*, Case No. C–13–4260 JSC, 2014 WL 894843,

26   at *6-7 (N.D. Cal. Mar. 4, 2014) (rejecting Section 10(a)(3) arguments in case where the

27   arbitrator "afforded Defendants great latitude in presenting their case.  Not every ruling

28   against a party amounts to misconduct.").  Here, Smith had the opportunity to present his

1   theory of the case and the fact that the arbitration award was not what he had hoped for does

2   not establish prejudice under 10 U.S.C. § 10(a)(3).

3       **B.      Judge Cahill's Arbitration Award Is Not in Manifest Disregard of the Law**

4

5       The Ninth Circuit provides that arbitration awards can only be vacated, pursuant to 10

6   U.S.C. §10(a)(4), if the movant demonstrates manifest disregard for the law.  *See Lagstein v.*

7   *Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th 2010).  A showing of

8   manifest disregard requires more than an error in the law or a misunderstanding or

9   misapplication of the law.  *Id.* Rather, manifest disregard occurs where it is "clear from the

10  record that the arbitrators recognized the applicable law and then ignored it."  *Id.* (quoting

11  *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)).  In essence,

12  the petitioner must show that the arbitrator understood what the law was and how it should be

13  applied and instead decided to implement "his own brand of industrial justice."  *Stolt-*

14  *Nielsen*, 559 U.S. at 671-72 (citation omitted).

15      Smith argues that Judge Cahill demonstrated manifest disregard of the law in three

16  ways:  (1) failing to follow applicable procedural rules; (2) ignoring the requirement to award

17  Smith reputational damages; and (3) disregarding his obligation to "make Smith whole"

18  through an attorneys' fee award.  To the contrary, each of these claims is meritless because

19  Judge Cahill properly considered and applied the relevant rules and laws.

20      **1.      Judge Cahill Did Not Ignore the Procedural Rules**

21      Smith claims that Judge Cahill ignored the JAMS Rules and the Scheduling Order

22  procedure when he informed the parties that, despite the relaxed Rules of Evidence in the

23  arbitration proceeding, "the more you're close to the Evidence Code requirements, the more

24  reliable it is for me." 1 Tr. 105:23-106:1.  This statement was not a "ruling" by Judge Cahill

25  that "he expected compliance with the California Evidence Code."  Motion at 4, 4 n.6 (citing

26  1 Tr. 105-106).  It was merely an indication that Judge Cahill generally affords more weight

27  to evidence with traditional indicia of reliability.  Judge Cahill's use of this method for

28  allocating weight to the evidence of the parties is in accord with JAMS Rule 22(d) ("Strict

conformity to the rules of evidence is not required . . . .") and does not contravene any part of Judge Cahill's Scheduling Order.  Ryan Decl., Ex. F at 19 (SMITH00232).

### 2. Judge Cahill Did Not Ignore Smith's Claim for "Reputational" Damages

While Smith asserted five claims regarding alleged adverse actions as a result of engaging in protected activity, Judge Cahill found in his favor on only two.  Ryan Decl., Ex. B (Interim Award) at 21 (SMITH00034).  Importantly here, Judge Cahill rejected Smith's claim that he was terminated by VMware as a result of protected activity.  *Id.*  As a result, Judge Cahill appropriately limited the damages award to "damages from October 1, 2008 until the end of Smith's tenure at VMware on March 15, 2010."  *Id.*, Ex. B (Interim Award No. 2) at 3 (SMITH00039).  Judge Cahill explicitly declined to "award post-termination losses because . . . Smith was not terminated in violation of the FCA."  *Id.*

In supplemental damages briefing, Smith argued he suffered four components of damage between October 1, 2008 and March 15, 2010:  reduction in base salary, reduction in commission, lost equity, and lost value of his Employee Stock Purchase Plan (ESPP).  Ryan Decl., Ex. J at 1 (SMITH00329); *id.*, Ex. B (Interim Award No. 2) at 3-4 (SMITH00039-40).  Examining the evidence that Smith presented relating to these four categories, Judge Cahill determined Smith was entitled to $305,421.66 in damages, plus interest and attorneys' fees.  *Id.*, Ex. B (Interim Award No. 2) at 7 (SMITH00043).

Smith nevertheless maintains that Judge Cahill failed to "make him whole" because he was not awarded damages for alleged "reputational harm."  However, Smith specifically categorized his "reputational harm" as "lost post-termination earnings" in his post-arbitration briefing, after Judge Cahill had found against Smith on his wrongful termination claim.  *Id.* Ex. J at 1 (SMITH00329).  Judge Cahill properly applied the law in rejecting Smith's alleged post-termination damages on the basis of his finding that "Smith was not terminated in violation of the FCA."  *Id.*, Ex. B (Interim Award No. 2) at 3 (SMITH00039).

While Judge Cahill did not award Smith all of the damages he sought, Judge Cahill did award Smith the damages he found supported by the record and that comported with the

1    law on the subject.

2        **3.**    <u>**Judge Cahill Did Not Ignore Applicable Law Regarding**</u>
3             <u>**Attorneys' Fees**</u>

4        The FCA provides for the award of "reasonable attorneys' fees."  31 U.S.C. §

5    3730(h).  The trier of fact (whether that be a judge or arbitrator) has discretion to consider a

6    host of factors in deciding what is reasonable when awarding fees, including the plaintiff's

7    "level of success."  *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983) (explaining "the level of

8    a plaintiff's success is relevant to the amount of fees to be awarded.").  This consideration is

9    of particular importance where a plaintiff succeeded on only some of his claims for relief.  *Id.*

10   at 434.  Where "a plaintiff has achieved only partial or limited success, the product of hours

11   reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

12   excessive amount."  *Id.* at 436.  The "most critical factor" in such situations is the degree of

13   success obtained.  *Id.*

14       Reflecting the thought process he went through in applying the facts to the law, Judge

15   Cahill summarized his reasoning for determining how Smith's level of success impacted his

16   final award:

17       While Smith ultimately succeeded, his degree of success was not what he
         wanted.  Smith sought a finding that both his demotion in 2008 and his ultimate
18       termination in January 2010 violated the FCA and he sought millions of dollars
         in damages as a result. . . .  [T]he record did not support such a result and Smith
19       was awarded just over $300,000. . . .  [T]he arbitrator finds that under *Hensley*
         and the other cases relying on *Hensley*, the results obtained in this arbitration
20       compel a reduction of 55 percent to the lodestar amount.

21   Ryan Decl., Ex. B (Final Award) at 7 (SMITH00010).

22       Smith claims that this reasoning is erroneous.  But Smith's view can only be based on

23   a misunderstanding of the law.  Smith concedes that he "is not claiming that Judge Cahill

24   erred in the interpretation or application of the law with respect to the reduction of the

25   lodestar fee amount."  Mot. at 20.  He claims nevertheless that Judge Cahill's fee award

26   failed to "make him whole" under the requirements of the FCA.  Smith cites to *Neal v.*

27   *Honeywell, Inc.*, 995 F. Supp. 889, 899 (N.D. Ill. 1998) in support of his position,

28   emphasizing the characterization of attorneys' fees as "special damages."  Mot. at 20-21.

Smith appears to argue that because attorneys' fees are "special damages," a party must be awarded the full lodestar for attorneys' fees.

Smith is simply incorrect.  The holding in *Neal* provided that, plaintiff need not have out-of-pocket attorney fee expenses to be awarded attorneys' fees as "special damages."  995 F. Supp. at 899.  This holding is inapplicable here, as Judge Cahill did not exclude any attorneys' fees for lack of proof of payment.  Instead, Judge Cahill applied the lodestar standard mandated by federal "fee shifting" statutes, as set forth by the Supreme Court in *Hensley*, 461 U.S. at 433-437.  Judge Cahill's attorneys' fee award was therefore not his "own brand of justice," but rather an appropriate application of facts to law.

**C.     There Is No Basis for Finding Evident Partiality Under 9 U.S.C. § 10(a)(2)**

In his final argument to void the million-plus dollar award, Smith claims that the hearing was tainted by "evident partiality" under 9 U.S.C. §10(a)(2).  In the first instance, this objection is waived by a party with knowledge of facts giving rise to an issue of potential bias who fails to raise it in a timely manner.  *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004).  Even assuming *arguendo* that Smith had not waived this argument, it would still fail.  While "actual bias" need not be shown to support such a claim, the Ninth Circuit has adopted a "reasonable impression of partiality" standard.  *In re Sussex*, 781 F.3d 1065, 1073-74 (9th Cir. 2015).  This "reasonable" standard for judging asserted conflicts of interest is less stringent than the strict standard applicable to judges, due to an arbitrator's necessary and numerous contacts and ties to the business world.  *Id.* at 1074.  Accordingly, "evident partiality" is found where there are "direct financial connections" between an arbitrator and a party or an arbitrator's law firm and a party.  *Id.*  In contrast, "long past, attenuated, or insubstantial connections between a party and an arbitrator " have routinely been rejected as sufficient to establish a "reasonable impression of partiality."  *Id.*

**1.     Smith Waived Any Purported Conflict by Not Raising It Prior to the Arbitration Hearing**

A party waives a claim for evident partiality under 9 U.S.C. §10(a)(2) where it "has

OPPOSITION TO MOTION TO
VACATE
15-cv-03750-HSG

1   constructive knowledge of a potential conflict but fails to timely object." *Fid. Fed. Bank*,

2   386 F.3d at 1313 (affirming confirmation of the arbitration award where the opposing party

3   had constructive knowledge of the fact indicating claimed partiality).

4         Smith's claimed partiality here involves Patricia Gillette, a former Orrick partner,

5   who joined JAMS in the fall of 2016.  As a partner at Orrick, Gillette served as outside

6   counsel for VMware in an unrelated litigation matter in 2009.  Smith was deposed in that

7   case, as an employee of VMware, and Gillette assisted with preparing Smith for and

8   defending him at his deposition.  Orrick was later engaged as outside counsel to again

9   represent VMware in this litigation, once the FCA claims were settled with the government[3]

10  and Smith's employment claims were transferred to this Court in August 2015.  However,

11  Gillette was not one of the Orrick attorneys representing VMware in this case.  Nevertheless,

12  in mid-2016, months after Orrick successfully compelled arbitration, Smith sent a letter to

13  Orrick insisting that Orrick withdraw as counsel for VMware in this case, arguing that Smith

14  had previously been Orrick's client and he had not waived the conflict, so Orrick could not

15  represent VMware against him in this matter.  Ryan Decl., Ex. H (SMITH00306-20).  Orrick

16  declined to withdraw, pointing out that Smith was never Orrick's client in the prior matter.

17  Seekao Decl., Ex. 3.  Smith never indicated as part of this exchange that he intended to rely

18  on Gillette as a witness in this case.  *See* Ryan Decl., Ex. H (SMITH00306-20).

19        Subsequent to Orrick's refusal to withdraw, in the fall of 2016, Gillette joined JAMS.

20  Gillette's joining of the JAMS organization was formally announced in October 2016.

21  Smith's counsel received this notice via email.  Ryan Decl., Ex. U (SMITH00690-91).  Smith

22  admits that "I was told in October, 2016 . . . that Patricia Gillette was joining the [JAMS]

23  organization . . . ."  Smith Decl., ¶ 10.  Smith now claims that he was "very apprehensive" as

24  a result, particularly because he learned "from my attorney that under our agreement with

25  JAMS we could not call Ms. Gillette as a witness . . . ."  *Id.*  However, Smith never indicated

26  an intent or desire to call Gillette.  This issue was not raised in the withdrawal discussion.

27  _____

28  [3] The FCA portion of the litigation was handled by attorneys from Skadden, Arps, Slate, Meagher & Flom LLP.

OPPOSITION TO MOTION TO
VACATE
15-cv-03750-HSG

1    *See* Ryan Decl., Ex. H (SMITH00306-20).  Gillette was not one of the nearly 100 persons

2    listed on Smith's first witness list.  Seekao Decl., Ex. 2.  She also was not on Smith's final

3    witness list.  *Id.*, Ex. 4.

4         Clearly, Smith was on notice of any issues relating to Gillette's association with

5    JAMS three months prior to the arbitration hearing.  He could not properly sit on his hands

6    and wait to raise the issue after the Final Award was not to his satisfaction.  As a result, this

7    alleged basis for vacating the arbitration decision has been waived.

8    **2.**    <u>**Ms. Gillette Joining JAMS Does Not Support a Finding of Evident**</u>

9    <u>**Partiality**</u>

10        Even assuming *arguendo* that Smith had not waived this argument, Smith's partiality

11   claim still fails.  Smith claims evident partiality is established here because Judge Cahill had

12   a duty to disclose Gillette joining JAMS and he did not do so.  Yet, JAMS did send out

13   notification of Gillette's joining the group in October 2016.  Smith admits that his counsel

14   not only received the notice, but also shared the information with him at that time, three

15   months prior to the arbitration hearing.  Smith Decl., ¶ 10; Ryan Decl., ¶ 8, Ex. U

16   (SMITH00690-91).

17        Smith cites no Federal Arbitration Act ("FAA") case for the proposition that such a

18   connection (former counsel for a company that is a party to the arbitration joining the dispute

19   resolution organization) is sufficient to require disclosure.  In any case, this is not the type of

20   ongoing financial relationship between the arbitrator and a party which creates concerns of

21   evident partiality.  *See In re Sussex*, 781 F.3d at 1073-74.  Former representation of a party

22   does not even require a federal judge to recuse himself from presiding over a dispute.

23   *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982) (rejecting

24   claim that a judge was required to recuse himself due to bias in a case where he represented a

25   party to the litigation in an unrelated matter six years prior).  Here, the more relaxed

26   arbitration standards apply and there is the added layer of assurance of impartiality because

27   the former representative of the party, Gillette, did not preside over the dispute, but merely

28

1   joined the same alternative dispute resolution organization to which Judge Cahill belongs.[4]

2   This insubstantial connection fails to demonstrate that there are sincere concerns of

3   impartiality of the arbitrator.  If Gillette's joining JAMS was sufficient to cause a conflict,

4   then her former clients would all be required to use a different dispute resolution service

5   while she serves as a JAMS neutral.  Such an extreme result is neither logical nor supported

6   by any persuasive authority, especially given the relaxed conflict requirement allowed for

7   arbitrators.

8          Smith's citation to *Gray v. Chiu*, 212 Cal. App. 4th 1355 (2013), does not change this

9   result.  Even assuming that California law applies—which it does not[5]—*Gray v. Chiu* is

10  neither controlling nor instructive.  In *Gray*, an attorney who participated in the arbitration

11  representing an individual defendant had joined the arbitration group handling the arbitration

12  prior to the arbitration.  212 Cal. App. 4th at 1360.  The participating attorney's membership

13  in the arbitration group was required to be disclosed by the arbitrator under California Ethics

14  Standard 8(b)(1)(B) (requiring disclosure where "A . . . lawyer *in the arbitration* . . . is a

15  member of the [dispute resolution organization]").  *Id.* at 1363.  The arbitrator's failure to

16  disclose this relationship, as required by Ethics Standard 8(b)(1)(B), was a violation of

17  California Code of Civil Procedure Section 1281.9(2) (requiring disclosure of matters

18  required by the ethics standards).  Ethics Standard 8(b)(1)(B) does not apply here because no

19  lawyer in the arbitration is currently associated as a member of the provider organization.  No

20  ethics standard applies to the relationship at issue here, a member of the arbitrator's large

21  dispute resolution organization, who is uninvolved in the instant arbitration, had a previous

22  relationship with a party and its counsel.

23

24  [4] According to its website, JAMS is the "largest private dispute resolution (ADR) provider in the world" with "[n]early 300 full time neutrals[.]"  *See* JAMS, *About JAMS*,
    https://www.jamsadr.com/about-jams/ (last visited Nov. 1, 2017).

25

26  [5] JAMS provides disclosures in accordance with specific provisions of California Civil Procedure, JAMS Ethical Guidelines of Arbitrators, and California Rules of Court Ethics Standards for Neutral Arbitrators in Contractual Arbitration.  Ryan Decl., Ex. R

27  (SMITH00645).  The FAA and federal law is still controlling for purposes of determining whether the alleged nondisclosure requires the award to be vacated.  *See Fid. Fed. Bank*, 386

28  F.3d at 1312.

OPPOSITION TO MOTION TO
VACATE
15-cv-03750-HSG

1    Smith's claim that he was precluded from calling Gillette as a witness due to her

2  joining the JAMS organization is refuted by the record.  While Smith's initial witness list for

3  the arbitration included nearly 100 witnesses, it did not include Gillette.  Seekao Decl., Ex. 2.

4  Nor did his pre-arbitration witness list.  *Id.*, Ex. 4.  Moreover, at no point in the hearing did

5  Smith raise the issue of needing to or even wanting to call Gillette as a witness.  Smith's

6  decision to raise the issue for the first time in his motion to vacate speaks for itself.

7  **IV.    CONCLUSION.**

8    The Federal Arbitration Act permits the Court to vacate an arbitration award only in

9  narrow circumstances.  A party is not entitled to a new arbitration merely because he is

10  disappointed by the outcome, as Smith is here.  In reviewing a motion to vacate, the Court's

11  role is to ensure that a party has not been prejudiced by misconduct, not reweigh the evidence

12  and substitute its own judgment regarding the legal conclusions.  Because Smith failed to

13  carry his burden to demonstrate he is entitled to relief, the Court must deny Smith's motion

14  to vacate.

15  Dated: November 1, 2017                     LYNNE C. HERMLE
                                              JESSICA R. PERRY
16                                            SHANNON B. SEEKAO
                                              MELANIE D. PHILLIPS
17                                            Orrick, Herrington & Sutcliffe LLP

18

19                                            By: *s/Melanie D. Phillips*
                                              MELANIE D. PHILLIPS
20                                            Attorneys for Defendant
                                              VMware, Inc.

21

22

23

24

25

26

27

28

Opposition to Motion to
Vacate
15-cv-03750-HSG