UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANE SMITH,<br>            Plaintiff,<br>v.<br>VMWARE, INC., et al.,<br>            Defendants. | Case No.15-cv-03750-HSG<br><br>**ORDER DENYING MOTION TO VACATE ARBITRATION AWARD**<br>Re: Dkt. No. 96 |

Pending before the Court is Plaintiff Dane Smith's motion to vacate the arbitration award he received on July 17, 2017. Dkt. No. 96. For the reasons set forth below, Plaintiff's motion is **DENIED**.[1]

## I. BACKGROUND

Plaintiff filed the operative Third Amended Complaint in the U.S. District Court for the Eastern District of Virginia on April 8, 2014. Dkt. No. 39 (Third Amended Complaint or "TAC"). Against Defendants VMware, Inc. and Carahsoft Technology Corp., Plaintiff alleged several violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), in addition to retaliation causes of action against his former employer, VMware. *See* TAC ¶¶ 121-83. On June 23, 2015, the parties entered a settlement agreement, under which Plaintiff dropped Carahsoft as a party. *See* Dkt. No. 59 at 3. From that point on, Plaintiff was bringing only "individual claims" against VMware, under the FCA and California employment law. *See id.* at 4. As such, Plaintiff moved for transfer to this district, which the court granted on August 12, 2015. *See* Dkt. No. 60.

Once in this Court, VMware ("Defendant") moved to compel arbitration of Plaintiff's

---
[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

claims. *See* Dkt. No. 76. On January 5, 2016, the Court granted Defendant's motion and dismissed the action without prejudice. *See* Dkt. No. 83 at 12. The parties proceeded to engage in arbitration proceedings before Judge William Cahill of JAMS. Dkt. No. 97 (Declaration of Jeffrey F. Ryan, or "Ryan Decl.") ¶ 4. Plaintiff filed his arbitration complaint on January 22, 2016. *Id.*, Ex. A. The hearing took place from January 17 to January 23, 2017 in San Francisco. *Id.*, Ex. I ("Scheduling Order") ¶ 8(a). On July 17, 2017, Judge Cahill entered a final award, granting Plaintiff $305,421.66 in compensatory damages, $4,546 in interest, $1,016,684.85 in attorney's fees, and $244,178 in costs, for a total award of $1,570,830.51. *Id.*, Ex. B, at 00012.[2]

On September 21, 2017, after the arbitration had taken place, Plaintiff moved to re-open the case so that he could file a motion to vacate the arbitration award. Dkt. No. 84. The Court granted his request over Defendant's objection on September 25, 2017. Dkt. No. 86.

On October 13, 2017, Plaintiff filed this motion to vacate the arbitration award. Dkt. No. 96 ("Mot."). Defendant filed its opposition on November 1, 2017, Dkt. No. 100 ("Opp."), and Plaintiff replied on November 10, 2017, Dkt. No. 101 ("Reply").

## II. LEGAL STANDARD

A party seeking vacatur of an arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "It is not enough . . . to show that the [arbitration] panel committed an error—or even a serious error." *Id.* Rather, a district court may vacate an arbitration award under the FAA on only four grounds, three of which are at issue to this case: (1) "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; (2) "where the arbitrators exceeded their powers"; and (3) where the arbitrators demonstrated "evident partiality or corruption." 9 U.S.C. § 10(a) ("section 10"). These are the "exclusive grounds" for vacatur of an arbitration award, *see Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), and are "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures," *U.S. Life Ins. Co. v. Superior*

---

[2] References to Exhibit B of the Ryan Declaration use the exhibit's Bates numbering system, as it contains multiple documents.

*Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (citation omitted). As such, if there is no section 10 issue, "confirmation [of the award] is required even in the face of erroneous findings of fact or misinterpretations of law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010) (citation omitted).

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins.*, 591 F.3d at 1173 (citation omitted).

## III. DISCUSSION

Plaintiff asserts three grounds for vacatur, none of which are meritorious. The Court considers each in turn.

### A. Judge Cahill's Evidentiary Decisions Did Not Render the Arbitration Unfair to Plaintiff.

To begin, Plaintiff contends that Judge Cahill failed to consider "pertinent and material" evidence within the meaning of section 10(a)(3), thus denying him "a fair opportunity to present his evidence and argue it." *See* Mot. at 1. First, he argues that Judge Cahill improperly excluded his declaration and its exhibits at the arbitration hearing. *Id.* at 15. Second, Plaintiff contends that Judge Cahill improperly excluded certain exhibits that Plaintiff believed would be admitted. *See id.* at 15-16. Neither contention is persuasive.

"A hearing is fundamentally fair if the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator—are met." *Carpenters 46 N. Cal. Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996) (citation omitted); *see also U.S. Life Ins.*, 591 F.3d at 1173 (stating that the primary role of federal courts in reviewing arbitration awards "is to ensure that the FAA's due process protections were afforded"). Accordingly, a court may vacate an arbitration award where an arbitrator "refus[es] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Arbitrators, however, are accorded "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *U.S. Life Ins.*, 591 F.3d at 1175 (citation omitted).[3] A party

---

[3] Until recently, the Ninth Circuit held that "a showing of prejudice is a prerequisite to relief based on an arbitration panel's rulings." *See U.S. Life Ins.*, 591 F.3d at 1174 n.9 (quoting *Emplr's Ins. of*

3

need not receive a perfect hearing—just a fair one. *See Emplr's Ins. of Wasau*, 933 F.2d at 1491 ("In short, perhaps [the defendant] did not enjoy a perfect hearing; but it did receive a fair hearing.").

Plaintiff has not shown that Judge Cahill failed to consider pertinent evidence within the meaning of section 10(a)(3). His argument seems to be that he "had been led to believe by Judge Cahill's Scheduling Order and the JAMS Rules" that his 81-page declaration and certain exhibits would be admitted. *See* Ryan Decl. ¶ 12. The Scheduling Order, as relevant here, directed counsel to "identify all non-rebuttal percipient and expert witnesses expected to testify at the Hearing and indicate the manner in which each witness is expected to testify (in-person, telephonically or by affidavit or declaration), not later than December 23, 2016." Scheduling Order ¶ 7(i). It also ordered the parties to prepare a joint exhibit list in advance of the hearing, and to "indicate any objection to the introduction of any exhibit." *Id.* ¶ 8(c). It further stated that "[e]xhibits not objected to shall be deemed admitted at the commencement of the hearing unless otherwise ordered by the arbitrator." *Id.* Plaintiff appears to believe that these rules, in conjunction with the events of the arbitration hearing, render Judge Cahill's failure to consider pertinent evidence self-evident. The Court disagrees.

At the arbitration hearing, counsel for Defendant objected to Plaintiff's attempt to enter his declaration into the record: "I think it's completely crazy to put in [the] declaration when your client's the claimant and he's here to testify. I've never seen it permitted, but it sounds to me like you're going to permit it." Dkt. No. 99 (arbitration hearing transcript, or "Tr.") at 233:24-234:2. When Judge Cahill suggested the parties might stipulate to entering the declaration into evidence, defense counsel refused. *See id.* at 234:3-5. Judge Cahill then asked whether Plaintiff intended to read the declaration into the record, to which Plaintiff's counsel responded that he was "prepared

---

*Wasau v. Nat'l Union Fire. Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir. 1991)). The court appeared to slightly revise that holding in *U.S. Life Insurance*, however, noting that the provision "necessarily implies prejudice to the rights of a party, without regard to" section 10(a)(3), which included a "final catch-all phrase" that held vacatur appropriate where an arbitrator's "misbehavior" prejudiced the rights of any party. *Id.* (citing 9 U.S.C. § 10(a)(3)). Regardless, the Court need not reach the question of prejudice because Plaintiff has failed to show that Judge Cahill is "guilty of . . . refusing to hear evidence pertinent and material to the controversy." *See* 9 U.S.C. § 10(a)(3).

to ask him all the questions." *See id.* at 234:6-15. Plaintiff's counsel further noted to Judge Cahill that

> [w]hat you told us to do in the scheduling order is to let the other side know how we are going to do it, if it's going to be depo, excerpts, declaration, affidavit or live testimony. We did that. We let them know we would be submitting a declaration for Mr. Smith as well as live testimony. We put them on notice. This is the first time I heard they were objecting.

*Id.* at 234:18-25. Judge Cahill suggested "see[ing] how this goes," to which Plaintiff's counsel responded, "No problem." *Id.* at 235:2-5. As Plaintiff tells it, what followed over the course of several days was a frantic attempt to get the content of his declaration—a crucial piece of evidence—into the record via direct examination of witnesses. *See* Mot. at 12-13. Further complicating matters was the fact that counsel for Defendant made numerous "time-consuming objections" to exhibits which Plaintiff believed had been admitted under paragraph 8(c) of the Scheduling Order, given that Defendant had not objected them prior to the hearing. *See id.* at 13-14. The crux of Plaintiff's claim under section 10(a)(3) is that

> [b]ecause the time allocated for the Arbitration was being consumed by having to walk [Plaintiff] through the facts contained in his Declaration [on direct examination], and identify the applicable exhibits, and respond to [counsel for Defendant's] copious objections—after VMware, *the respondent/defendant*, had fully presented *its* case in chief—the evidence bearing on most of the 2009 "protected activity" [relevant to Plaintiff's claims] never saw the light of day.

Mot. at 15 (original emphasis).

The Court summarizes the events above to make one point: Plaintiff's objection sounds more in regret that his litigation strategy did not work at the arbitration hearing than it does in a genuine attack on any evidentiary decision by Judge Cahill. Nothing in the Scheduling Order comes close to supporting Plaintiff's position. Section 7(i) does not guarantee that a party will be able to proffer a declaration if he discloses it, and section 8(c) makes abundantly clear that "[e]xhibits not objected to shall be deemed admitted at the commencement of the hearing *unless otherwise ordered by the arbitrator*." Scheduling Order ¶¶ 7(i), 8(c) (emphasis added). In fact, one of rules cited by Plaintiff is JAMS Rule 22(e), which states that "[t]he Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence." Ryan Decl., Ex. F

5

(JAMS Employment Arbitration Rules & Procedures, or "JAMS Rules"), at 19. Judge Cahill properly exercised that discretion here, and provided Plaintiff with a more than sufficient opportunity to present his evidence. Indeed, Plaintiff points to no actual examples of Judge Cahill refusing to consider certain evidence, and admits that he was permitted to examine witnesses to get the contents of his declaration into the record (and that he elected to do so). Instead, Plaintiff's counsel describes a litigation strategy that did not go as anticipated because he ran out of time:

> [W]hen I was pressed by Judge Cahill to curtail my examination of Smith in order to afford [defense counsel] ample time to cross-examine him, even though VMware's case-in-chief had already been fully presented, I chose to accept the one[] hour he offered rather than risk getting no more time at all. I rushed myself and my client to authenticate exhibits that I had been led to believe were already admitted, and to elicit oral testimony that I thought had already been introduced by way of Smith's declaration.

Ryan Decl. ¶ 13; *see also* Mot. at 12-13.

In light of the above, Plaintiff has not met his heavy burden to show that Judge Cahill failed to consider pertinent evidence. Nor is the case law he provided in support of his argument under section 10(a)(3) applicable.[4] Accordingly, Plaintiff's motion for vacatur of the arbitration on the ground that Judge Cahill violated section 10(a)(3) is denied.

### B. Judge Cahill Did Not Act in "Manifest Disregard of the Law."

Plaintiff next contends that Judge Cahill acted in "manifest disregard of the law" when he "ignored the procedural rules that were part of the arbitration agreement, and . . . the settled authority mandating that he order **all** relief necessary to make [Plaintiff] whole on account of

---

[4] Plaintiff contends that *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141 (2d Cir. 1992) is "instructive on the precise issue presented here." *See* Mot. at 16. The Court finds that case to be inapposite. In *Iran Aircraft*, the Iran-United States Claims Tribunal issued an award in a dispute between two Iranian companies and Avco, an American corporation, which the Iranian parties subsequently sought to enforce in federal court. 980 F.2d at 142. The judge presiding over the pre-hearing conference for the tribunal "specifically advised" Avco "not to burden the Tribunal by submitting kilos and kilos of invoices." *Id.* at 146 (internal quotation marks omitted). That presiding judge was later replaced, at which point the Tribunal began "requir[ing] the actual invoices to substantiate Avco's claim"—but because Avco was proceeding according to the "earlier understanding," the tribunal ultimately "rejected Avco's claim for lack of proof." *Id.* The court found "that by so misleading Avco, however unwittingly, the Tribunal denied Avco the opportunity to present its claim in a meaningful manner." *Id.* This case is nothing like *Iran Aircraft*. Judge Cahill did not affirmatively represent that Plaintiff would be permitted to enter his declaration, and then later change course. Nor did he provide any basis for Plaintiff to believe that his exhibits would admitted under section 8(c) of the Scheduling Order, given the "unless otherwise ordered" language of that provision.

6

[Defendant's] retaliation." Mot. at 17 (original emphasis). Plaintiff asserts three specific grounds for this argument. First, he argues that "Judge Cahill ignored the JAMS Rules and the Scheduling Order procedure that 'became part and parcel of the arbitration contract,' thereby denying Smith the opportunity to present his evidence." *Id.* at 18. Second, he contends that Judge Cahill "completely ignored" the reputational damages to which he was entitled. *See id.* at 18-19. And third, Plaintiff contests Judge Cahill's reduction of his attorney's fee award, casting it as "willful" ignorance of his "mandatory duty to make Smith whole." *Id.* at 20. The Court finds none of these arguments to be persuasive.

Arbitrators "exceed[] their powers" under section 10(a)(4) when they issue an award that "exhibits manifest disregard of the law." *Lagstein*, 607 F.3d at 641 (citation and internal quotation marks omitted). Manifest disregard of the law is "more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law"—rather, "it must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Id.* (citations, internal quotation marks, and brackets omitted). In this way, "[it] is only when [an] arbitrator strays from interpretation and application of the [arbitration] agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (citation omitted) (second and fourth brackets in original).

### 1. Plaintiff fails to show that Judge Cahill ignored procedural rules within the meaning of section 10(a)(4).

Plaintiff's first argument that Judge Cahill ignored the applicable procedural rules is without merit. He bases his argument on JAMS Rules 22(d) and 22(e), as well as paragraphs 7(i) and 8(c) of the Scheduling Order. *See* Mot. at 10, 18. As relevant here, JAMS Rule 22(d) provides that an arbitrator "may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence." JAMS Rules at 19. Rule 22(e) states:

> The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have

7

> not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

JAMS Rules at 20. And, as detailed above, paragraphs 7(i) and 8(c) of the Scheduling Order govern how the parties are expected to identify their witnesses in advance of the arbitration hearing, as well as the general procedure for admitting exhibits. Plaintiff contends that "[t]he effect of Judge Cahill's wholly unexpected rule change was to slow down the presentation of Smith's case, making it impossible for him to <u>fairly</u> present the testimonial and demonstrative evidence he, and his counsel, had been assured was, in large part, *already admitted*." Mot. at 18 (original emphasis).

Plaintiff's position is based on an unreasonable reading of the applicable rules, not to mention a mischaracterization of Judge Cahill's exercise of discretion. As the Court has already explained, Judge Cahill did not contravene the Scheduling Order in not allowing Plaintiff to enter his declaration or in excluding certain exhibits. Moreover, with respect to JAMS Rules 22(d) and (e), Plaintiff points to nothing in the record showing "that the arbitrator[] recognized the applicable law and then ignored it." *See Lagstein*, 607 F.3d at 641. Instead, he cites one early exchange as an example of defense counsel "cajol[ing] Judge Cahill, after her opening statement, to simply, but radically, change the rules." *See* Mot. at 18. There, defense counsel asked the court to "keep an eye out for the lack of foundation in the parade of disgruntled employees' testimony," notwithstanding "the relaxed Rules of Evidence which you and other arbitrators often apply in arbitration." Tr. at 105:16-22. In response, Judge Cahill stated, "I think I've told people, maybe I haven't told you guys, that the more you're close to the Evidence Code requirements, the more reliable it is for me." *Id.* at 105:23-106:1. Judge Cahill's statement did not constitute a "wholly unexpected rule change," or a "change" at all. *See* Mot. at 18. Rather, it was simply an indicator of how he intended to apply the discretion conferred upon him by JAMS Rules 22(d) and (e).

Nor is *Kashner Davidson Securities Corp. v. Mscisz*, 531 F.3d 68 (1st Cir. 2008) "clearly analogous" or "on-point," as Plaintiff contends. *See* Mot. at 17. There, the court found it "clear" that an arbitration panel of the National Association of Securities Dealers had "disregarded" the "unambiguous language" of the relevant arbitration rules when it dismissed a case with prejudice without first "demonstrating that sanctions short of a dismissal were ineffective." *Mcisz*, 531 F.3d

8

at 76. Based on the principle that an arbitrator who "ignores the plainly stated procedural rules incorporated in the agreement to arbitrate . . . is subject to a manifest disregard of the law challenge," *id.* at 77 (citation omitted), as well as the panel's previous rejections of "numerous requests for sanctions," the court found that the panel's "misapplication of the clear language of the rule [could] only be deemed an intentional and willful disregard of the law," *id.* at 78. This case is plainly distinguishable: Plaintiff essentially challenges Judge Cahill's exercise of discretion, rather than pointing to an example of his "recogniz[ing] the applicable law and then ignor[ing] it." *See Lagstein*, 607 F.3d at 641. Here again, Plaintiff fails to carry his heavy burden in showing that vacatur is warranted.

### 2. Plaintiff fails to provide any meaningful support for his contention that Judge Cahill ignored the reputational damages to which Plaintiff believes he was entitled.

Plaintiff's argument with respect to reputational damages—which amounts to a contention that Judge Cahill "completely ignored" that component of relief, despite the evidence before him—is similarly meritless. Because Plaintiff does little to develop this argument, it comes close to seeking a "judicial review" of the arbitration's merits and "whether or not the [arbitrator's] findings are supported by the evidence in the record," both of which are impermissible under section 10. *See Lagstein*, 607 F.3d at 640-41 (citations, internal quotation marks, and brackets omitted). Even assuming that Plaintiff's contention is that Judge Cahill recognized that Plaintiff was entitled to reputational damages and then affirmatively ignored that entitlement, however, the motion for vacatur again fails—not least because Plaintiff does not carry his heavy burden by engaging the relevant standard or citing the record in support of his assertion.[5]

---

[5] Even if this were not the case, Defendant correctly points out that the record demonstrates that Judge Cahill considered (and subsequently rejected) Plaintiff's claims to reputational damages. *See* Opp. at 13-14. On March 13, 2017, Judge Cahill entered an interim arbitration award, concluding in part that Plaintiff had failed to establish that Defendant's "decision to terminate him January 2010 was substantially motivated by [Plaintiff's] protected activity under the FCA." Ryan Decl., Ex. B, at 00034. Judge Cahill then granted the parties leave to provide further briefing regarding damages. *Id.* at 00035. In Plaintiff's damages brief, filed on March 21, 2017, Plaintiff divided the relief he sought into two categories: the "direct reduction in salary and compensation from October 1, 2008 to the end of his tenure at VMware on March 15, 2010," and "[l]ost post-termination earnings due to," among other things, "diminished reputation." *Id.*, Ex. J, at 1. In a second interim arbitration award, Judge Cahill stated that he would "not award any post-termination losses because, as found in the [first] Interim Award and adopted fully herein,

### 3. Judge Cahill's reduced attorney fee award did not evince manifest disregard for the law.

Plaintiff's final argument under section 10(a)(4) is that Judge Cahill "willfully ignored the pertinent law with respect to the 'make-whole' provisions of the FCA" when he reduced Plaintiff's attorney's fee award. *See* Mot. at 20. He specifies that he "is not claiming that Judge Cahill erred in the interpretation or application of the law with respect to the lodestar fee amount, but rather than he ignored the <u>mandatory duty to make Smith whole</u>, as required by the FCA." *Id.* (original emphasis).

Plaintiff again misapprehends the purpose and scope of section 10(a). His argument on this point amounts to a contention that because Judge Cahill reduced the lodestar amount by 55 percent, *see* Ryan Decl., Ex. B, at 00010, he necessarily failed to provide Plaintiff with "all relief necessary to make [him] whole" within the meaning of the FCA, *see* 31 U.S.C. § 3703(h)(2). Plaintiff again provides no legal authority for that position—presumably because the law supports Judge Cahill's actions. The FCA provides that "all relief necessary to make [an] employee, contractor, or agent whole" includes "reasonable attorneys' fees." *Id.* § 3703(h). The Ninth Circuit has said that Congress, in the FCA, "adopted a standard for fees that is directly analogous to that of 42 U.S.C. § 1988." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002). It is well settled that the amount of a reasonable fee award under section 1988 must be determined on a case-by-case basis in light of twelve factors, *see Hensley v. Eckerhart*, 461 U.S. 424, 429-30 (1983) (citation omitted), the "most critical" of which "is the degree of success obtained," *id.* at 436. Here, Judge Cahill found that "[w]hile [Plaintiff] ultimately succeeded, his degree of success was not what he wanted," which in turn "compel[led] a reduction of 55 percent to the lodestar amount." Ryan Decl., Ex. B, at 00010.

The only support Plaintiff provides in support of his assertion that Judge Cahill disregarded the law in his award of attorney's fees is a vague citation to *Neal v. Honeywell*, 995 F. Supp. 889 (N.D. Ill. 1998). While that 20-year-old, non-binding district court case did evaluate the FCA's

---

[Plaintiff] was not terminated in violation of the FCA." *Id.*, Ex. B, at 00039. The record thus belies Plaintiff's assertion that Judge Cahill "completely ignored [the reputational] component of damages." *See* Mot. at 19.

attorney's fee provision, it considered a question that is inapposite here: namely, whether an attorney's fee award under the FCA is "limited to those paid or incurred by" the prevailing party. *See id.* at 897. Plaintiff appears to cite *Neal* for its statement that "[r]easonable attorneys' fees are part of [the prevailing party's] compensation as a successful plaintiff in an employment discrimination case [under the FCA]," *see id.* at 899, but fails to articulate how that is relevant to Judge Cahill's *Hensley* analysis.

Accordingly, Plaintiff's motion for vacatur of the arbitration on the ground that Judge Cahill violated section 10(a)(4) is denied.

### C. Plaintiff Waived Any Objection That Judge Cahill Demonstrated "Evident Partiality" Under Section 10(a)(2).

Last, Plaintiff argues that Judge Cahill demonstrated "evident partiality" in failing to disclose his relationship with a JAMS colleague who once represented Defendant. *See* Mot. at 21. Defendant contends that Plaintiff has waived any objection on this ground—and that even if that were not true, Plaintiff has failed to satisfy the applicable "reasonable impression of partiality" standard. *See* Opp. at 15. The Court agrees that Plaintiff has waived this objection.

Section 10(a)(2) provides that courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." In *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, the Ninth Circuit considered "whether a party with constructive knowledge of potential partiality of an arbitrator waives its right to challenge an arbitration award based on evident partiality . . . if it fails to object to the arbitrator's appointment or his failure to make disclosures until *after* an award is issued." 386 F.3d 1306, 1313 (9th Cir. 2004) (emphasis added). It held that the waiver doctrine does apply to such a party who "fails to timely object." *Id.*

Plaintiff's basis for asserting that Judge Cahill has demonstrated "evident partiality" is attenuated at best, and focuses on the role of Patricia Gillette, who was former lead outside counsel for Defendant before becoming an arbitrator at JAMS. *See* Ryan Decl. ¶ 4. Plaintiff's counsel, Jeffrey Ryan, states that he first met Gillette in August 2009 while representing another employee of Defendant in an unrelated case. *Id.* In the course of that representation, Ryan deposed Plaintiff, who was then represented by Gillette and who would later become Ryan's

11

client. *Id.* ¶ 5. In 2010, when Ryan took up this case, he "learned from [his] client that he had confided to Ms. Gillette . . . a great deal of specific information" related to his whistleblower claims. *See id.* Ryan further states that after consenting to JAMS and Judge Cahill as the arbitrator for this matter, he became concerned when presented with information showing that Defendant's firm, Orrick, provided JAMS and Judge Cahill "substantially more business" than all of Plaintiff's attorneys combined, and "became even more uncomfortable" after "receiv[ing] several disclosures indicating that even though we were involved in arbitration with VMware and the Orrick firm, Judge Cahill was continuing to accept assignments as a neutral in cases in which Orrick, and sometimes [defense counsel], were involved." *Id.* ¶¶ 3, 7.

Most relevant here are the events of October 2016, when Ryan received "a 'blast,' or mass-market email from J.A.M.S. announcing that Ms. Gillette had joined the organization." *Id.* ¶ 8. Ryan noted that the blast was unlike "the usual and customary disclosure notices" he received with respect to Judge Cahill's other cases involving Orrick. *Id.* ¶ 8; *see also* Dkt. No. 98 (Declaration of Dane Smith, or "Smith Decl.") ¶ 10 (stating that Plaintiff learned in October 2016 that Gillette was joining JAMS, "almost a full 10 months after JAMS had been selected and Judge Cahill had been assigned"). Both Plaintiff and Ryan represent that they would not have participated in arbitration with JAMS had they known that Gillette would later join the organization. *See* Ryan Decl. ¶ 6 ("[I]f I had known that Ms. Gillette would be joining the J.A.M.S. organization, and in the same office as Judge Cahill, prior to the conclusion of Smith's arbitration of his employment retaliation claims against VMware, I would have declined [defense counsel's] suggestion that we agree to use J.A.M.S. instead of [a competing arbitration provider]."); Smith Decl. ¶ 9 ("I can say without equivocation that had I known that Patricia Gillette was going to become Judge Cahill's partner in the JAMS organization, and in the very same office, during the time that my arbitration was still pending, there is absolutely no way that I would have consented to allowing JAMS to conduct the arbitration.").

Here, Plaintiff and Ryan have both conceded that they knew about Gillette's joining JAMS prior to the arbitration hearing. It is not material whether the notice regarding Gillette was in the form Ryan had come to expect, as in any event, both he and Plaintiff admit to having

12

constructive knowledge of the potential basis for objection. Crucially, this motion is the first time Plaintiff has raised the issue. The Ninth Circuit unambiguously held that "the waiver doctrine applies where a party to an arbitration has constructive knowledge of a potential conflict but fails to timely object"—*i.e.*, fails to object "until after an award is issued." *See Fidelity Fed. Bank*, 386 F.3d at 1313. Plaintiff fails to meaningfully respond to Defendant's waiver argument in reply, asserting only that the October 2016 blast regarding Gillette's move to JAMS "was also 6 months <u>after</u> Judge Cahill had been acquainted, by VMware's April 4, 2016 letter brief[,] with facts revealing the deep involvement of Patricia Gillette in this case." Reply at 10 (citation omitted) (original emphasis). Nowhere does Plaintiff address why he did not object to Judge Cahill as a mediator before the end of arbitration and the filing of this motion. Additionally, Plaintiff further admits that he "does not have any smoking-gun facts proving 'actual bias.'" *See id.* at 11. That concession is highly relevant under *Fidelity Federal Bank*. There, in applying the waiver doctrine to an argument under section 10(a)(2), the court noted that

> [t]here is no charge or evidence of actual bias and no indication that the arbitration award was anything but fair. A rule that places the burden on parties to obtain disclosure statements from arbitrators who were initially party-appointed but later agree to act neutrally is consistent with our policy favoring the finality of arbitration awards. It is also consistent with our policy favoring arbitration as a speedy and cost-effective means of resolving disputes.

386 F.3d at 1313. So too here.

Accordingly, the Court finds that Plaintiff has waived his argument for vacatur of the arbitration award under section 10(a)(2).[6]

//
//
//
//
//

---

[6] For this reason, the Court need not reach Plaintiff's assertion that Judge Cahill's professional relationship with Gillette, a JAMS colleague, demonstrated "evident partiality" within the meaning of section 10(a)(2).

13

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to vacate the arbitration award is **DENIED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: 8/7/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge